**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SCA PROMOTIONS, INC.,** | § | |
| | § | |
|     **Plaintiff and Counter-Defendant,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:14-cv-957** |
| | § | |
| **YAHOO! INC.,** | § | |
| | § | |
|     **Defendant and Counter-Plaintiff.** | § | |

---

**SCA'S RESPONSE TO YAHOO'S OBJECTIONS
TO THE HONORABLE MAGISTRATE JUDGE RAMIREZ'S ORDER
ON MOTION FOR PROTECTIVE ORDER**

---

DATE:  March 18, 2015

Respectfully submitted,

Jeffrey M. Tillotson, P.C.
Texas Bar No. 20039200
jmt@lynnllp.com
Richard A. Smith
Texas Bar No. 24027990
rsmith@lynnllp.com
Jonathan R. Patton
Texas Bar No. 24088198
jpatton@lynnllp.com
LYNN TILLOTSON PINKER & COX, L.L.P.
2100 Ross Avenue, Suite 2700
Dallas, Texas  75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEYS FOR PLAINTIFF
SCA PROMOTIONS, INC.**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 2

    A.    Relevant Factual Background ................................................................................ 2

    B.    Procedural History ................................................................................................. 3

ARGUMENT AND AUTHORITIES ........................................................................................ 5

    A.    Applicable Legal Standard ..................................................................................... 5

    B.    Judge Ramirez Properly Placed the Initial Burden on Yahoo ............................... 6

    C.    Judge Ramirez's Determination That Yahoo Failed to Meet Its Burden
        Was Not Clearly Erroneous ................................................................................... 9

    D.    Regardless, Yahoo's Own Emails Convincingly Demonstrate That Ms.
        Mayer is a Key Fact Witness With Unique Personal Knowledge ....................... 11

    E.    Judge Ramirez's Grant of Affirmative Relief is Explicitly Permitted by the
        Federal Rules of Civil Procedure ......................................................................... 14

CONCLUSION ......................................................................................................................... 15

CERTIFICATE OF SERVICE ................................................................................................ 16

## TABLE OF AUTHORITIES

**Other Authorities**

*Anthony v. Marion Cnty. Gen. Hosp.*,
    617 F.2d 1164 (5th Cir. 1980) ................................................................................... 14

*Biasco v. U.S. Envtl. Prot. Agency*,
    2001 WL 1172205 (N.D. Tex. Sept. 27, 2001) ............................................................ 6

*Bonaventure v. Butler*,
    593 F.2d 625 (5th Cir. 1979) ..................................................................................... 15

*Castillo v. Frank,*
    70 F.3d 382 (5th Cir. 1995) ......................................................................................... 5

*F.D.I.C. v. Conner*,
    20 F.3d 1376 (5th Cir. 1994) ..................................................................................... 14

*Good Tech Co. v. Little Red Wagon Tech., Inc.*,
    No. 3:11-CV-2373 (N.D. Tex. July 1, 2013) ............................................................... 8

*Landry v. Air Line Pilots Ass'n*,
    901 F.2d 404 (5th Cir. 1990) ....................................................................................... 7

*Ordemann v. Unidentified Party*,
    No. 06-4796, 2008 WL 695253, at *3 (E.D. La. Mar. 12, 2008)…………………….14

*Powertech Tech., Inc. v. Tessara, Inc.*,
    2013 WL 3884254 (N.D. Cal. July 26, 2013)……...…………………………………..8

*Salter v. Upjohn Co.*,
    593 F.2d 649 (5th Cir. 1979) ....................................................................................... 8

*Schmidt v. Goodyear Tire & Rubber Co.*,
    2003 U.S. Dist. LEXIS 28130 (E.D. Tex. Jan. 7, 2003) ........................................ 8, 11

*Simms v. NFL*,
    2013 WL 9792709 (N.D. Tex. July 10, 2013) ............................................................. 8

*Staton Holdings, Inc. v. Russell Athletic, Inc.*,
    2010 WL 1372479, at *1 (N.D. Tex. April 7, 2010) ........................................... passim

*U.S. v. Garrett*,
    571 F.2d 1323 (5th Cir. 1978) ..................................................................................... 7

*United States v. United States Gypsum Co.,*
    333 U.S. 364 (1948) ..................................................................................................... 5

*Van Den Eng v. The Coleman Co.*,
    2005 WL 3776352 (D. Kan. Dec. 14, 2005)……………………………………….. 8

*Williams v. Greenlee*,
    210 F.R.D. 577 (N.D. Tex. 2002) ................................................................................ 6

**Statutes**

28 U.S.C. § 636(b)(1)(A) ............................................................................................................... 5

**Rules**

Fed. R. Civ. P. 26(c) ................................................................................................................ 6, 15

Fed. R. Civ. P. 72(a) ...................................................................................................................... 5

**Other Authorities**

8A Wright & Miller, *Federal Practice and Procedure*, § 2035 (3d ed.) ..................................... 14

TO THE HONORABLE COURT:

Plaintiff SCA Promotions, Inc. ("SCA") hereby files this Response to Yahoo! Inc.'s ("Yahoo") Objections To The Honorable Magistrate Judge Ramirez's Order On Motion For Protective Order (Doc. No. 84) ("Yahoo's Objections"), and in support thereof, would respectfully show the following:

## **INTRODUCTION**

This is an appeal under Federal Rule of Civil Procedure 72(a) from a discovery order entered by Magistrate Judge Ramirez on February 20, 2015. After considering and rejecting all of the same arguments raised in this appeal, Judge Ramirez denied Yahoo's Motion for Protective Order to prevent SCA from deposing Yahoo's CEO, Marissa Mayer. *See* Doc. No. 54 (Mot. Prot. Order); Doc. No. 77 (Judge Ramirez Order); Doc. No. 80 (Hearing Transcript). Specifically, Judge Ramirez determined that Yahoo "did not meet its initial burden under Rule 26(c) and (b) of the Federal Rules of Civil Procedure to show good cause sufficient to warrant quashal of the depositions of its high level executive officers." Doc. No. 77 at 1.

Ms. Mayer was a central player and decision-maker in the facts underlying this dispute, and her deposition is necessary for SCA to defend against Yahoo's counterclaims. For the reasons stated below, the Court should overrule Yahoo's Objections. Judge Ramirez correctly held that, as the movant seeking a protective order, Yahoo bears the initial burden to show good cause for denying SCA Ms. Mayer's deposition. Judge Ramirez's determination that Yahoo did not meet its burden was not clearly erroneous, and therefore her ruling should be affirmed. In any event, the evidence SCA presented convincingly demonstrates that Ms. Mayer is a key fact witness with unique personal knowledge that SCA must discover to defend against Yahoo's counterclaims. Accordingly, SCA respectfully asks this Court to overrule Yahoo's Objections and order it to comply with Judge Ramirez's discovery order.

## BACKGROUND

A.   **Relevant Factual Background**

The background of the present dispute is not complicated. SCA brought suit against Yahoo for refusing to pay a contractual termination fee. The contract related to Yahoo's proposal to operate a "Tourney Pick 'Em" promotion, in which contestants would attempt to correctly predict the entire bracket for all 63 games of the 2014 NCAA Men's Basketball Tournament. At stake was to be a $1 billion prize, consisting of 40 annual payments of $5 million each and a balloon payment at the end of that term. In its agreement with Yahoo, SCA agreed to underwrite that potential prize in exchange for a fee of $11 million. If no contestant filled out a perfect bracket, SCA would profit; but if somebody did, then SCA would be on the hook for the $1 billion prize.

As it turned out, however, Yahoo abandoned its plans for the $1 billion promotion after Quicken Loans beat Yahoo to the punch and announced a similar contest first. Although Yahoo chose not to proceed with its promotion (and instead partnered with Quicken to run its contest), it was still obligated under the parties' contract to pay SCA the $11 million fee, or a cancellation fee if it chose to terminate the contract. Yahoo refused to pay SCA and SCA was forced to file this lawsuit.

Yahoo answered SCA's suit and filed counterclaims of its own, including breach of contract, breach of fiduciary duty, and misappropriation of trade secret. In those counterclaims, Yahoo alleges that the idea for a $1 billion bracket contest was its confidential and proprietary trade secret, and that SCA improperly disclosed the concept to Warren Buffett and his company, Berkshire Hathaway. *See* Doc. No. 11 at 7–8 ¶¶ 3, 8 (Def.'s Am. Ans. & Counterclms). Yahoo specifically alleges that "[d]uring the course of the relationship between Yahoo and SCA, SCA approached third parties, including Warren Buffett and Berkshire Hathaway . . . about

underwriting" the bracket contest. *Id.* at 8 ¶ 10. Yahoo claims that as a result of that contact, Berkshire Hathaway "announced its own contest in conjunction with Quicken Loans, the 'Billion Dollar Bracket Challenge,' that was virtually identical to the Concept created by Yahoo." *Id.* ¶ 11. Yahoo also denies news reports that Berkshire Hathaway developed its contest in or around November 2013, and alleges instead that the idea for Berkshire Hathaway and Quicken's tournament bracket contest "was originated by Yahoo in the summer of 2013." *Id.* at 9 ¶¶ 14–15. Yahoo claims that SCA's disclosure of the tournament bracket contest concept violated contractual confidentiality obligations, was a breach of fiduciary duty, and amounted to a misappropriation of a trade secret. *Id.* at 10, 12–14.

Thus, at the heart of Yahoo's counterclaims is its allegation that the $1 billion bracket contest is confidential information and a trade secret that SCA "improperly" disclosed this information to Berkshire Hathaway. SCA disagrees. In fact, one of SCA's main defenses is that the idea for a $1 billion bracket contest is neither confidential nor a trade secret, and that Yahoo itself did not keep the concept of its contest a secret, but instead disclosed it to numerous third parties (including, significantly, Berkshire Hathaway) without any protections in place to keep that information confidential. If that is true, then Yahoo's counterclaims would lack merit. As explained in detail below, Ms. Mayer has unique personal knowledge about several important issues in this case, including Yahoo's disclosures to third parties. Indeed, Yahoo's own emails clearly demonstrate her key role in the planned promotion.

**B.     Procedural History**

SCA's counsel first requested deposition dates for Yahoo's witnesses—including Ms. Mayer—on December 1, 2014. After several weeks without receiving any dates, on December 24, 2014, SCA's counsel pressed the matter by sending Yahoo's counsel deposition notices for dates in January, which SCA offered to move to accommodate the schedules of Yahoo's counsel

and witnesses. Doc. No. 54-1 ¶ 6. Yahoo refused, however, to provide dates for Ms. Mayer's deposition and eventually, on January 20, 2015, filed a Motion for Protective Order to prevent her deposition. Doc. No. 54. Magistrate Judge Ramirez ordered the parties to submit a Joint Submission, which they did on February 6, 2015. Doc. No. 67. Then, on February 20, 2015, after a full hearing, Judge Ramirez denied Yahoo's motion and ordered Yahoo to produce Ms. Mayer for deposition by March 13, 2015. Doc. No. 77. The following chart shows the timeline of relevant events.

| Date | Event |
|---|---|
| December 1, 2014 | SCA's Counsel Requests Dates for Ms. Mayer's Deposition |
| December 24, 2014 | SCA Notices Ms. Mayer's Deposition for January 16, 2015 |
| Early January 2015 | SCA agrees to postpone Ms. Mayer's deposition while the parties negotiate Yahoo's objections to the deposition |
| January 20, 2015 | Yahoo files Motion for Protective Order seeking to quash Ms. Mayer's deposition |
| February 20, 2015 | Magistrate Judge Ramirez holds hearing on Yahoo's Motion for Protective Order, denies the motion, and orders Yahoo to produce Ms. Mayer for deposition by March 13, 2015 or as agreed to by the parties. |

Judge Ramirez denied Yahoo's Motion for Protective Order because she determined that Yahoo "did not meet its initial burden under Rule 26(c) and (b) of the Federal Rules of Civil Procedure to show good cause sufficient to warrant quashal of the depositions of its high level executive officers." Doc. No. 77 at 1. In her order, Judge Ramirez reasoned that

> While courts have the discretion under Rule 26(b) to order that the deposition of a high-ranking official be taken after the depositions of other employees with relevant knowledge, the movant [Yahoo] did not meet its burden to provide a sufficient demonstration of facts that would justify the exercise of this discretion in this case at this time. It cited to only 4 pages in the joint appendix and therefore provided no or insufficient evidence to show that conducting the depositions would cause an undue burden, prejudice, specific harm, or that the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive.

*Id.* at 2.

On March 6, 2015, Yahoo appealed Judge Ramirez's ruling by filing its Objections to the Honorable Magistrate Judge Ramirez's Order on Motion for Protective Order. Doc. No. 84. The Court granted a limited stay of Judge Ramirez's Order until March 27 and ordered expedited briefing to resolve Yahoo's appeal. Doc. No. 92.

## ARGUMENT AND AUTHORITIES

**A.     Applicable Legal Standard**

A motion for a protective order is a non-dispositive, pretrial motion. The court is authorized to reconsider a magistrate judge's order on any pretrial, non-dispositive matter only where it has been shown that the order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); *Castillo v. Frank,* 70 F.3d 382, 385 (5th Cir. 1995). This statutory burden is reflected in Federal Rule of Civil Procedure 72, which provides that "[t]he district judge to whom the case is assigned shall consider such objections [to the magistrate judge's order] and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

This highly deferential standard of review requires the court to affirm the decision of the magistrate judge unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *United States v. U. S. Gypsum Co.,* 333 U.S.

364, 395 (1948). As explained by Judge Fitzwater in *Staton Holdings, Inc. v. Russell Athletic, Inc.*, No. 3:09-CV-0419-D, 2010 WL 1372479, at *1 (N.D. Tex. April 7, 2010):

> The clearly erroneous standard applies to the factual components of the magistrate judge's decision. The district court may not disturb a factual finding of the magistrate judge unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed. If a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, a district judge may not reverse it. The legal conclusions of the magistrate judge are reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in her legal conclusions. The abuse of discretion standard governs review of that vast area of choice that remains to the magistrate judge who has properly applied the law to fact findings that are not clearly erroneous.

*See also Biasco v. U.S. Envtl. Prot. Agency*, No. A 300CV1792G, 2001 WL 1172205, at *1 (N.D. Tex. Sept. 27, 2001) (Fish, J.) (characterizing the standard of review under Rule 72(a) as "extremely deferential") (citation and internal quotation marks omitted).

### B. Judge Ramirez Properly Placed the Initial Burden on Yahoo

Yahoo argues that Judge Ramirez erred by placing the initial burden on Yahoo "to provide a sufficient demonstration of facts that would justify the exercise of [the Court's] discretion" to prevent SCA from deposing Ms. Mayer. Doc. 84 at 5. Instead, Yahoo contends that "Fifth Circuit case law . . . clearly recognizes the need to depose lower-level employees before allowing the deposition of an apex witness." *Id.*

Yahoo is wrong. Judge Ramirez correctly recognized that the initial burden was on Yahoo, as the party seeking a protective order, to put forth sufficient evidence to demonstrate good cause for preventing SCA from deposing Ms. Mayer. The plain language of Rule 26 allows courts to enter a protective order only "for good cause," Fed. R. Civ. P. 26(c)(1), and the law of the Fifth Circuit is well-established that the "'party seeking a protective order to prevent or postpone a deposition must show good cause and the specific need for protection.'" *Staton*, 2010 WL 1372479, at *2 (quoting *Williams v. Greenlee*, 210 F.R.D. 577, 579 (N.D. Tex. 2002));

*see also Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990) (holding that when parties moved to prevent depositions, "the burden was on [the movants] to show why a protective order was warranted. The burden was not on [the party seeking discovery], other than in rebuttal, to show why the discovery was needed."); *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) ("Rule 26(c), Fed. R. Civ. P., provides that a protective order shall issue only upon a showing of "good cause." The burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.").

Thus, Judge Ramirez correctly ruled that Yahoo bore the initial burden to put forth "a particular and specific demonstration of fact" to show good cause for why Ms. Mayer should not be deposed, and, contrary to Yahoo's argument, that requirement does not change just because the witness is a CEO. Judge Fitzwater's decision in *Staton Holdings*, 2010 WL 1372479, is directly on point on this issue.[1] In that case, Staton sought to depose Russell Athletic's President, and Russell Athletic moved for a protective order preventing the apex deposition. *Id.* at *1. The magistrate judge granted Russell Athletic's motion based on his finding that Staton had failed to show the witness had the requisite knowledge to justify the deposition. *Id.* Staton appealed to district court, and Judge Fitzwater reversed the magistrate judge's decision, holding that

> The magistrate judge abused his discretion by requiring Staton to make a threshold showing that [the apex witness] had knowledge of facts likely to lead to the discovery of admissible evidence. Although that question is among the ones properly considered when evaluating whether a protective order should be granted, *the burden of establishing entitlement to quashal and a protective order is on the movant, Russell*.

*Id.* at *3 (emphasis added).

---

[1] Tellingly, Yahoo did not even address *Staton Holdings* in its Objections.

**SCA'S RESPONSE TO YAHOO'S OBJECTIONS TO ORDER ON PROTECTIVE ORDER**     **Page 7**
01842-402

*Staton Holdings* squarely rejects Yahoo's argument that lower level employees *must* be deposed first before an apex witness can be deposed, and none of the cases Yahoo cites support that proposition either. Yahoo primarily relies on *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979), but in that case the Fifth Circuit held only that the district court's decision to postpone or prevent an apex witness' deposition "was within [the judge's] *discretion* in light of defendant's reasonable assertions that [the witness] was extremely busy and did not have knowledge of the facts." *Id.* at 651 (emphasis added). Nothing in *Salter* remotely suggests that lower-level witnesses *must* be deposed first or that the moving party does not have the initial burden to demonstrate good cause for postponing the deposition. In fact, *Salter*'s reference to the movant's assertions that the apex witness was busy and did not have knowledge of the facts is consistent with requiring the moving party to meet its initial burden by putting forth facts to show good cause for avoiding the deposition.[2]

None of the other cases Yahoo cites holds that a party moving to prevent an apex deposition does not bear the initial burden to present facts that show good cause for its quashal. *See Good Tech Co. v. Little Red Wagon Tech., Inc.*, No. 3:11-CV-2373 (N.D. Tex. July 1, 2013) (unpublished opinion that relies on *Salter* and is silent on which party bears the initial burden of proof); *Simms v. NFL*, No. 3:11-CV-0248-M-BK, 2013 WL 9792709, (N.D. Tex. July 10, 2013) (granting motion to compel and silent on which party bears the initial burden of proof in a motion for protective order); *Schmidt v. Goodyear Tire & Rubber Co.*, No. 2:01-CV-272 HWM, 2003 U.S. Dist. LEXIS 28130 (E.D. Tex. Jan. 7, 2003) (one page opinion citing *Salter* and

---

[2] Courts in other circuits that have addressed this issue have also concluded that motions for protective orders for apex witnesses are treated under the same standards as any other protective order. *See, e.g.*, *Powertech Tech., Inc. v. Tessara, Inc.*, 2013 WL 3884254 (N.D. Cal. July 26, 2013) (holding that apex official bears the burden of showing good cause to support entry of protective order limiting deposition); *Van Den Eng v. The Coleman Co.*, 2005 WL 3776352 (D. Kan. Dec. 14, 2005) (same).

holding without any discussion of which party bears the initial burden of proof that the courts have the discretion to regulate apex depositions).

Yahoo is correct that the Court has the discretion to prevent or postpone apex depositions, but that relief is not mandatory. Rather, the moving party must overcome its initial burden of presenting facts or evidence sufficient to trigger the Court's exercise of the discretion that it has to regulate discovery. Judge Ramirez thus correctly held that Yahoo bore "the initial burden under Rule 26(c) and (b) of the Federal Rules of Civil Procedure to show good cause sufficient to warrant quashal of the depositions of its high level executive officers." Doc. No. 77. Yahoo may disagree with Judge Ramirez's ruling, but it is not contrary to the law.

### C. Judge Ramirez's Determination That Yahoo Failed to Meet Its Burden Was Not Clearly Erroneous

Whether or not Yahoo met its initial burden to show good cause for entry of a protective order is a factual component of Judge Ramirez's order that the Court may only overturn upon a finding of abuse of discretion or that the application of law to fact was clearly erroneous. *Staton Holdings, Inc.*, 2010 WL 1372479, at *1. Here, it was well within Judge Ramirez's discretion to conclude that Yahoo did not meet its initial burden and that decision was not clearly erroneous.

In support of its Motion for Protective Order, Yahoo cited to four pages in the parties' Joint Appendix, *see* Doc. No. 67 at 5–7, and provided only a declaration from one of its attorneys, Desiree Ripo, Doc. No. 54-1. At the hearing, Yahoo's counsel also argued that it is undisputed Ms. Mayer is an apex witness. Feb. 20, 2015 Hearing Transcript at 13:9–25 (Doc. 85 at D. App. 3–31). Judge Ramirez considered all of this evidence and determined that Yahoo failed to show good cause that Ms. Mayer's deposition should be postponed. *Id.* at 24:11–13 ("And again, I can't find, based on the record before me, even if I consider Ms. Ripo's declaration, that that showing has been made here.").

Judge Ramirez's ruling is exactly the kind of judgment call that cannot be overturned as long as it "is plausible in light of the record viewed in its entirety" and not "clearly erroneous." *Staton Holdings, Inc.*, 2010 WL 1372479, at *1. Here, Judge Ramirez's decision easily satisfies that extremely deferential standard. **<u>First</u>**, none of the emails that Yahoo cited to in the Joint Submission suggest that Ms. Mayer lacks unique personal knowledge. Yahoo argues they "clearly demonstrate that Mr. Fuchs could be questioned on information that SCA claimed it could only seek directly from Ms. Mayer." Doc. 84 at 10. But that is not correct. All those emails show is that Mr. Fuchs was *also* involved in some aspects of Yahoo's promotion and partnership with Quicken. Significantly, they do not even begin to suggest that Mr. Fuchs has knowledge of the conversations Ms. Mayer may have had with third parties, the reasons for the decisions she alone made in connection with Yahoo's planned $1 billion promotion, or her conversations and decisions in connection with Yahoo's ultimate decision to partner with Quicken. **<u>Second</u>**, Ms. Ripo's declaration is wholly insufficient.[3] As one of Yahoo's lawyers, Ms. Ripo does not have the requisite knowledge to speak to Ms. Mayer's knowledge about the issues in this case. Moreover, Ms. Ripo provided nothing more than conclusory statements about Ms. Mayer's knowledge, the fact that Ms. Mayer is Yahoo's CEO, and that she was not involved in the "ground-level details" of the planned $1 billion promotion. Doc. 54-1. It was well within Judge Ramirez's discretion to conclude that these conclusory facts from someone without direct personal knowledge did not constitute sufficient proof to meet Yahoo's initial burden. **<u>Third</u>**, the mere fact that Ms. Mayer is an apex witness is insufficient to demonstrate good cause for quashing her deposition. The previously discussed case law from the Fifth Circuit and beyond

---

[3] In fact, Ms. Ripo's affidavit was not included in Yahoo's Joint Submission as required by Judge Ramirez's January 22, 2015 Order, which provides the guidelines for the Joint Submission. Doc. No. 58. Judge Ramirez could have refused to consider it altogether on that basis, but made it clear in her ruling that even if she were to consider it, Yahoo still did not meet its burden. Feb. 20, 2015 Hearing Transcript at 24:11–13 (Doc. 85 at D. App. 3–31).

makes that clear, and, as SCA's counsel pointed out at the hearing, most of the cases Yahoo cited where courts granted protective orders involved affidavits or declarations from the apex witnesses detailing their lack of knowledge about the case. *See, e.g.*, *Schmidt*, 2003 U.S. Dist. LEXIS 28130 (granting protective order based on CEO's affidavit stating he had no personal knowledge). By contrast, other than a conclusory declaration from one of its attorneys, Yahoo made no attempt to deny Ms. Mayer's personal involvement in the facts at issue in this case.

Thus, Judge Ramirez properly and duly considered all of the evidence Yahoo presented in support of its Motion for Protective Order and determined that Yahoo did not meet its initial burden to show good cause for postponing Ms. Mayer's deposition. Her decision was well reasoned and certainly not clearly erroneous. Consequently, Yahoo's Objections should be overruled.

### D.   Regardless, Yahoo's Own Emails Convincingly Demonstrate That Ms. Mayer is a Key Fact Witness With Unique Personal Knowledge

Even if Yahoo had met its initial burden, SCA presented copious evidence that firmly establishes Ms. Mayer's unique personal knowledge. This is a high-profile case that involves the top players at some of the nation's most prominent companies. In its counterclaims, Yahoo alleges that SCA's CEO wrongfully disclosed the concept of Yahoo's $1 billion promotion to *Warren Buffett*, who then took the idea to *Dan Gilbert*, the chairman of Quicken Loans. Scores of emails produced by Yahoo reveal that its own CEO, Ms. Mayer (sometimes referred to in emails as "MM"), was also actively involved in the development and approval of Yahoo's promotion, in reaching out to third-parties to negotiate contracts and solicit sponsorships for the contest, and in negotiating Yahoo's eventual partnership with Quicken Loans.

SCA needs to depose Ms. Mayer to discover what conversations she had with third parties (including with Warren Buffett) and what she disclosed to them about Yahoo's plans for

the $1 billion promotion. That information is critical to establishing and buttressing SCA's contention that Yahoo itself disclosed the concept of its $1 billion promotion to third parties, which would discredit Yahoo's claim that SCA's disclosure violated confidentiality obligations or misappropriated trade secrets. Indeed, multiple emails that Yahoo produced indicate that Ms. Mayer may have had—and at least contemplated having—numerous such conversations with third parties. For instance:

- A November 2013 PowerPoint presentation notes that one of the next steps for deciding whether to use Berkshire Hathaway as an underwriter for the $1 billion prize is *"Decide on 1 or 2 best options and Marissa [Mayer] to contact Buffett directly to reduce best option closer to $10M range"* J. App. at 44 (Doc. No. 85 at D. App. 120–227; Doc. No. 67-1) (emphasis added).[4]

- Similarly, a November 12, 2013 email from Yahoo employee Kenneth Fuchs states as a potential next step in negotiations with Berkshire Hathaway, *"[d]ecide if close enough for MM to contact Buffett directly"* J. App. at 83 (emphasis added).

- Another November 2013 email about obtaining sponsors for Yahoo's promotion states that *"Specifically, we are looking to identify a top 10 list of our best relationships to be accessed at the CEO/CMO level."* J. App. at 50 (emphasis added).

- In a January 9, 2014 email chain about reaching out to clients/potential sponsors for Yahoo's contest, Yahoo employee Ned Brody states that *"MM [Marissa Mayer] has asked UA not to talk to anyone until she personally calls a few of her contacts."* J. App at 25 (emphasis added).

- Also, on January 9, 2014, another Yahoo employee notes that *"Apparently marissa is going to make personal calls to two CEOs of [sponsor] targets."* J. App. at 29 (emphasis added).

In addition, SCA needs to depose Ms. Mayer about Yahoo's eventual partnership with Quicken Loans, which emails indicate Ms. Mayer herself initiated and took an active lead role in negotiating. For instance:

---

[4] Citations to "J. App." refer to the parties' Joint Appendix filed in connection with their Joint Submission. The joint appendix was included in Yahoo's Appendix to its Objections (Doc. No. 85). It can also be found at ECF No. 67-1.

- An email chain on January 21, 2014 – the same day that Quicken Loans announced its $1 billion contest – reveals that Ms. Mayer reached out to Quicken founder Dan Gilbert about Quicken's contest. J. App. at 15–16. The substance of those conversations is highly relevant to this case, including whether Ms. Mayer said anything to Quicken about it being Yahoo's idea and the substance of the resulting negotiations.

- An email from March 1, 2014 discusses Yahoo's partnership with Quicken and notes that "*This is a deal with our tourney product that was led by Marissa [Mayer] herself.*" J. App. at 33 (emphasis added).

- Tellingly, another email from February 20, 2014 reports that "The long and short of it: Yahoo and Quicken Loans have been in discussions to partner on their Billion Dollar Bracket challenge, where Yahoo would essentially host the bracket, and in return QL would run a sizeable media spend. . . . Reason why you are just hearing about this now is that all discussions to this point have been at Elliot Bell level and up. *Negotiations have been at the Marissa [Mayer] level.* J. App. at 75 (emphasis added).

Finally, numerous emails Yahoo produced demonstrate Ms. Mayer's involvement in key decisions made in connection with Yahoo's planned $1 billion promotion. For instance:

- Emails from around November 16, 2013 show that Ms. Mayer made the final decision for Yahoo to pursue the $1 billion bracket contest promotion. J. App. at 78. Not only that, but Ms. Mayer also made the final decision on whether to pay Berkshire Hathaway's price to have them act as the main underwriter for the promotion. Ms. Mayer states *"As much fun as it would be to have Warren involved, I think we have to pass on BH." Id.* (emphasis added). Mr. Buffett's potential involvement and Yahoo's consideration of using him are both issues that are highly relevant to this lawsuit.

- In another email, a Yahoo employee notes to Ms. Mayer that *"Marissa, I'm very supportive either way. Team has done there [sic] best to negotiate down Berkshire per your request."* J. App. at 84 (emphasis added). Yahoo's position vis-à-vis Berkshire and any negotiations Yahoo had with Berkshire are highly relevant to SCA's defenses.

- A December 4, 2014 email listing recent "highlights" includes *"$1 billion bracket deal approved by Marissa [Mayer] and we are moving forward closing the deal with DE Shaw."* J. App. at 100 (emphasis added).

- Yahoo's marketing manager for sports, Brian Flaherty remarks in a December 20, 2013 email that *"the launch/announcement plans [for the contest/promotion] are still undecided as you know, with Marissa M very involved at this point."* J. App. at 28 (emphasis added).

- In an email from January 9, 2013, Yahoo corporate representative Marissa Bataille notes that *"we are in a holding pattern until MM [Marissa Mayer] decides how she wants to announce [the contest/promotion]."* J. App. at 17 (emphasis added).

All of these emails convincingly demonstrate that Ms. Mayer has substantial unique personal knowledge that SCA needs to explore to defend against Yahoo's claims. Details about her conversations with third parties, her negotiations with Quicken, and decisions that she made are matters solely within Ms. Mayer's personal knowledge and cannot be obtained by deposing other witnesses.

Thus, even if the Court determines that Yahoo did meet its initial burden, it should still affirm Judge Ramirez's Order on the basis that the evidence presented by SCA demonstrates that Ms. Mayer has unique personal knowledge and SCA is entitled to take her deposition. *See Ordemann v. Unidentified Party*, No. 06-4796, 2008 WL 695253, at *3 (E.D. La. Mar. 12, 2008) ("[T]his Court is not limited to consideration of the grounds discussed by the Magistrate; rather it may affirm the underlying decision on any ground sustainable in the record.")

### E. Judge Ramirez's Grant of Affirmative Relief is Explicitly Permitted by the Federal Rules of Civil Procedure

Finally, Judge Ramirez acted properly in ordering Ms. Mayer's deposition. Federal Rule of Civil Procedure 26(c)(2) gives the court discretion to "order that any party or person provide or permit discovery" when denying a motion for a protective order. *See also* 8A Wright & Miller, *Federal Practice and Procedure*, § 2035 (3d ed.) ("If a protective order is denied, the court . . . may go a step farther and issue an affirmative order compelling the discovery that was sought."). Courts in this circuit have long followed this practice. *See, e.g.*, *F.D.I.C. v. Conner*, 20 F.3d 1376, 1378-79 (5th Cir. 1994) (noting the district court ordered discovery after denying plaintiff's motion for protective order); *Anthony v. Marion Cnty. Gen. Hosp.*, 617 F.2d 1164,

1168 (5th Cir. 1980) ("After denying the plaintiff's motions [for a protective order], the district judge ordered him to appear for a deposition."); *Bonaventure v. Butler*, 593 F.2d 625, 626 (5th Cir. 1979) ("After denying [the plaintiff's] motions [for a protective order], the district judge ordered him to appear for a deposition."). While it is true, as Yahoo! argues, that "a protective order pursuant to [Fed. R. Civ. P.] 26(c) does not provides [*sic*] the sole remedy for challenging a deposition notice," that is the remedy that Yahoo elected to pursue. Judge Ramirez denied Yahoo's motion, and the plain language of Rule 26(c)(2) specifically allows her to order the deposition. Yahoo's Objection on this issue should be overruled.

## CONCLUSION

For the reasons stated above, the Court should overrule Yahoo's Objections.

DATE: March 18, 2015

Respectfully submitted,

/s/ Jeffrey M. Tillotson

Jeffrey M. Tillotson, P.C.
Texas Bar No. 20039200
jmt@lynnllp.com
Richard A. Smith
Texas Bar No. 24027990
rsmith@lynnllp.com
Jonathan R. Patton
Texas Bar No. 24088198
jpatton@lynnllp.com
LYNN TILLOTSON PINKER & COX, L.L.P.
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

ATTORNEYS FOR PLAINTIFF
SCA PROMOTIONS, INC.

CERTIFICATE OF SERVICE

      I hereby certify that all counsel of record are being served on March 18, 2015 with a copy of this document *via* the Court's CM/ECF system.

Jeffrey M. Tillotson, P.C.

4818-8610-3330, v. 2