**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SCA PROMOTIONS, INC., | § | |
| **Plaintiff and Counter-Defendant,** | § | |
| | § | |
| v. | § | **Civil Action No. 3:14-CV-957-O** |
| | § | |
| YAHOO! INC., | § | |
| **Defendant and Counter-Plaintiff.** | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Pursuant to the order of reference dated June 3, 2016 (doc. 281), before the Court is the defendant's *Brief in Support of Yahoo! Inc.'s Motion Against Segregation of Attorneys' Fees*, filed May 2, 2016 (doc. 275). Based on the relevant filings and applicable law, the defendant should be awarded $913,961.23 in attorneys' fees.

**I. BACKGROUND**

SCA Promotions, Inc. (Plaintiff) filed suit against Yahoo! Inc. (Defendant) on January 30, 2014, in the 160th Judicial District Court in Dallas County, Texas, alleging that it had breached an agreement relating to a promotional event for the 2014 NCAA Men's Basketball Tournament. (doc. 1-3 at 2-6.)[1] Plaintiff claimed that "[s]ince [Defendant] cancelled on the contract on January 27, 2014, the Contract requires [Defendant] to pay [Plaintiff] $5.5 million (50% of the $11 million fee, of which $1.1 million already had been paid)." (*Id.* at 4.) It sought $4.4 million, plus interest and costs. (*Id.* at 4-5.) Defendant removed the case to federal court and asserted six counterclaims for negligent breach of contract, breach of covenant of confidentiality, negligent misrepresentation,

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

breach of contract, breach of fiduciary duty, and misappropriation of trade secrets.[2]  (docs. 1, 11.) Both parties sought attorneys' fees.  (*See* docs. 106 at 6; 116 at 21-22.)

The parties conducted discovery, including nineteen depositions.  (*See* docs. 276 at 22-23; 292-1 at 6-10.)  Both sides moved for summary judgment on July 6, 2015.  (*See* docs. 149, 150.) On November 18, 2015, the court granted summary judgment in favor of Defendant on Plaintiff's breach of contract claim, and in favor of Plaintiff on all of Defendant's counterclaims.  (doc. 237 at 1-2.)  It then ordered "that [Plaintiff] refund [Defendant] $550,000.00 as a result of the Court's granting of [Defendant's] Motion for Summary Judgment as to [Plaintiff's] breach of contract claim," and dismissed with prejudice all claims in the lawsuit.  (doc. 269 at 1.)

The court expressly found that Defendant was a "prevailing party" for purposes of awarding both costs and attorneys' fees under Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2014). (docs. 270 at 8; 271 at 7-8.)  It taxed $70,269.88 in costs against Plaintiff on December 30, 2015.[3] (doc. 254)  Defendant was ordered to "submit additional briefing that include[d] the information to calculate the appropriate amount of attorney's fees under the lodestar method."  (doc. 271 at 11.) The order did not address segregation of attorneys' fees.  (*See id.*)

On May 2, 2016, Defendant moved for $2,418,687.40 in attorneys' fees and expenses, and it argued that segregation of fees was unnecessary.  (doc. 275 at 17.)  Winston & Strawn LLP (Winston) served as lead counsel for Defendant, Darrell W. Cook & Associates (DWCA) served as

---

[2] Defendant's counterclaims for negligent breach of contract, breach of the covenant of confidentiality, and negligent misrepresentation were dismissed on August 11, 2014.  (doc. 28.)

[3] The costs taxed against Plaintiff included (1) fees of the Clerk ($575); (2) fees for service of summons and subpoena ($4,001); (3) fees for printed or electronically recorded transcripts necessarily obtained for the case ($51,588.04); (4) fees and disbursements for printing ($252.67); (5) fees for witnesses ($365); and (6) fees for exemplification and the cost of making copies of any materials where the copies are necessarily obtained for use in the case ($13,488.17).  (doc. 276 at 31.)

local Texas counsel, and Gober Hilgers PLLC (Gober) served as local Nebraska counsel.  (doc. 276 at 12-13.)  Defendant also enlisted the services of Christian Tregillis, an expert in damages, and Christopher Nolland, an expert mediator.  (*Id.* at 13.) Plaintiff responded on July 1, 2016,[4] and Defendant filed its reply and an additional appendix on July 6, 2016.  (docs. 292, 295, 296.)

Plaintiff moved to strike Defendant's reply because it allegedly "filed a host of untimely evidence with its Reply," or in the alternative for leave to file a sur-reply.  (doc. 297.)  On July 12, 2016, Plaintiff was granted leave to file a sur-reply, and Defendant was also granted permission to "file a final Reply limited to the arguments made in [Plaintiff's] Sur-Reply."  (doc. 299 at 1-2.) Plaintiff filed its sur-reply on July 21, 2016 (doc. 302), and Defendant filed its final reply on July 28, 2016 (doc. 303).  The application is now ripe for recommendation.

## II. EVIDENTIARY OBJECTION

Plaintiff objects to the second declaration of Thomas Patrick Lane,[5] and a Texas Lawbook article that were submitted with Defendant's reply.  (doc. 302 at 2.)

### A.    <u>Declaration</u>

Plaintiff objects to Mr. Lane's second declaration "because it goes beyond providing factual

---

[4] Plaintiff originally filed its response and objection to Defendant's requested fees on June 14, 2016, as two separate documents.  (*See* docs. 283-84.)  Plaintiff appears to have refiled the two documents that same day, and the earlier filings were marked as "disregarded per attorney" because they were refiled as documents 285-86.  (*See* docs. 283-84.)  Defendant objected to Plaintiff exceeding the 25-page limit under the local rules, and moved to strike Plaintiff's response and objections.  (*See* doc. 288.)  On June 28, 2016, Plaintiff's objection to Defendant's requested fees was unfiled by court order.  (doc. 290) (unfiling doc. 286).  On July 1, 2016, Plaintiff moved to substitute its response and objection with a combined response.  (doc. 293) (requesting to replace docs. 283 and 284 with 292).  On July 5, 2016, Plaintiff's motion was granted and its amended response purportedly replaced documents 283 and 284.  (doc. 294.) Because documents 283 and 284 were previously replaced by documents 285 and 286 "per attorney," it appears that documents 285 and 286 should have been replaced by document 292.  Nevertheless, both parties agree that document 292 is Plaintiff's live response to Defendant's application for attorneys' fees.  (*See* docs. 295 at 3; 302 at 7.)

[5] No objection was made to Mr. Lane's first declaration, which was submitted in the first appendix on May 2, 2016.  (*See* docs. 276, 292.)

3

averments to actually making legal arguments just like a brief." (doc. 302 at 2.) Plaintiff does not identify the specific statements to which it objects, however. (*Id.*) Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence it wishes to strike and stating the specific grounds for striking it. *Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 722 (N.D. Tex. 2006) (citing *United States v. Avants*, 367 F.3d 433, 445 (5th Cir. 2004)). Objections lacking specificity do not satisfy the requirements of Rule 103, and a loosely formulated and imprecise objection does not preserve error. *Id.* (citing *United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998). "[A] trial court judge must be fully apprised of the grounds of an objection." *Id.* Because Plaintiff's objection does not meet the specificity requirements of Rule 103(1)(a), it is **OVERRULED**.

## B.     Article

Plaintiff also objects to the inclusion of a Texas Lawbook article, entitled *Lawyers Rates in Texas Rocket Up – $1,000 an Hour is in the Rear-view Mirror*, because the "article is hearsay, not proper evidence of attorneys' fees or rates, and irrelevant to proving up the reasonableness of Winston's rates." (doc. 302 at 2.) Except in limited circumstances, an out-of-court statement offered to prove the truth of the matter asserted is hearsay, and subject to certain exceptions, is not admissible as evidence. *See* Fed. R. Evid. 801 and 802; *see also Hicks v. Charles Pfizer & Co. Inc.*, 466 F. Supp. 2d 799, 804-05 (E.D. Tex. 2005) ("Generally, newspaper articles are 'classic, inadmissible hearsay.' ") (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005)). The proponent of hearsay bears the burden of demonstrating that an exception to the hearsay rule applies. *Broadcase Music, Inc. v. Tex Border Mgmt., Inc.*, No. 3:10-CV-2524-BH, 2012 WL 4119111, at *4 (N.D. Tex. Sept. 18, 2012) (citing *Sowders v. TIC United Corp.*, No. SA-05-CA-309-

OG, 2007 WL 3171797, at *1 (W.D. Tex. Aug. 15, 2007) (once a party properly makes a hearsay

objection, the burden shifts to the proponent of evidence to show by a preponderance of the evidence

that the evidence falls within an exclusion or exception to the hearsay rule)).

The article to which Plaintiff objects addresses hourly billing rates in Texas.  (*See* doc. 296

at 44-46.)  Defendant responds that "the article from THE TEXAS LAWBOOK merely support the

arguments made in [its] Motion Against Segregation: that [Defendant's] requested attorneys' fees

are reasonable and should not be segregated."  (doc. 303 at 4.)  It further argues that "[Plaintiff's]

objection to [Defendant's] reference to THE TEXAS LAWBOOK is equally meritless in that [Plaintiff]

fails to provide any legal support demonstrating that the article in question is hearsay. Yet again, [it]

is using conclusory, unsupported statements in an attempt to float meritless arguments."  (*Id.*)

Defendant's response does not meet its burden of showing that the article is admissible under any

of the hearsay exceptions set forth in Rules 803 and 804.  *See* Fed. R. Evid. 803 and 804.  Plaintiff's

hearsay objection is **SUSTAINED**,[6] and the article will not be considered.[7]

### III. SEGREGATION OF ATTORNEYS' FEES

Defendant first argues that segregation of attorneys' fees is unnecessary.  (doc. 275 at 5.)

### A.     Requirements for Segregation

Under Texas law,[8] a fee applicant "is ordinarily required to segregate fees incurred on claims

---

[6] Based on this ruling, consideration of Plaintiff's additional relevancy objection is unnecessary.  (*See* doc. 302 at 2) (noting the article is "irrelevant").

[7] Consideration would not change the recommendation regarding the appropriate amount of fees to be awarded.

[8] An award of attorneys' fees "is governed by the same law that serves as the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Because Texas law governed the breach of contract claim, it also authorizes the award of attorneys' fees.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2014).

allowing recovery of fees from those that do not." *Stewart Title Guar. Co. v. Aiello*, 941 S.W.2d 68, 73 (Tex.1997).  In certain limited circumstances, a fee applicant can avoid this requirement if he can show that a recoverable and an unrecoverable claim are sufficiently intertwined that he would have done the same work for which he is requesting attorneys' fees even if he had not brought the unrecoverable claim.  *In re Alonzo*, 540 F. App'x 370, 373 (5th Cir. 2013) (per curiam) ("Yet interrelated or intertwined facts are not enough to trigger the exception; 'it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated.' ") (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311-12 (Tex. 2006)).  The party seeking to invoke this exception has the burden of demonstrating that it applies, however.  *Tow v. Speer*, No. H-11-3700, 2015 WL 1058080, at *16 (S.D. Tex. Mar. 10, 2015) (citing *Gallagher Headquarters Ranch Dev., Ltd. v. City of San Antonio*, 269 S.W.3d 628, 642 (Tex. App.–San Antonio 2008, pet. granted, judgm't vacated by agr.); *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 455 (Tex. App.–Houston [1st Dist.] 2007, no pet.)).

This showing requires more than just pointing out a common set of facts: "it is only when discrete legal services *advance both* a recoverable *and* unrecoverable claim that they are so intertwined that they need not be segregated."  *Chapa*, 212 S.W.3d at 313-14 (emphasis added). "This standard does not require more precise proof for attorney's fees than for any other claims or expenses," however.  *Id.* at 314.  The standard to determine whether the fees for intertwined claims are recoverable is whether the claimant would have done the *same work* for which it is requesting fees had it *not* brought the non-recoverable claim.  *See id.* at 313 ("To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service.").  The Texas Supreme Court later reiterated that "[i]n *Chapa*, [it] reestablished the

6

rule that attorney's fees are recoverable only if necessary to recover on a contract or statutory claim allowing them, and eliminated the exception for fees incurred solely on separate but arguably intertwined claims." *Varner v. Cardenas*, 218 S.W.3d 68, 69 (Tex. 2007) (per curiam).

Defendant argues that segregation of attorneys' fees is unnecessary "[b]ecause [Defendant's] claims arose out of the same set of operative facts and relied upon the same evidence as its successful defense against breach of contract, segregation of its fees is unnecessary." (doc. 275 at 13.) In support, it argues that "[a]ny attempts to segregate work that advanced *only* [Defendant's] defenses to [Plaintiff's] claim or *only* [Defendant's] counterclaims would be impossible" because the "requested attorneys' fees arise from both [Plaintiff's] claim and [Defendant's] counterclaims." (doc. 295 at 6) (emphasis in original). Defendant relies primarily on the fact that "this Court has already held that [Plaintiff] and [Defendant's] claims are intertwined," and that "[the parties] multiple claims and counterclaims, 'ar[o]se out of the same transaction,' namely, the contract into which the parties entered." (doc. 275 at 14-15; *accord* docs. 295 at 6; 303 at 1; *see also* docs. 276 at 10-12; 296 at 11-13.) It also provides the declarations of two of its attorneys and an attorney who reviewed and opined regarding the reasonableness of its attorneys' fees. (docs. 276 at 5-34; 276-8 at 52-63; 296 at 5-30, 89-92.)

Plaintiff responds that it won dismissal of all of Defendant's counterclaims. (doc. 292 at 9.) It argues that (1) Defendant was awarded attorneys' fees under Chapter 38 based solely on its prevailing on Plaintiff's breach of contract claim; (2) Defendant is wrong in claiming that its counterclaims were part of its successful defense of Plaintiff's breach of contract claim; and (3) there was no overlap between the evidence and facts regarding the interpretation of the contract that led to Defendant's $550,000 refund and its claims against Plaintiff for wrongfully disclosing its

confidential information/trade secrets.   (doc. 292 at 12-14.)   It also argues that "[Defendant] wrongly asserts that its counterclaims were based on a breach of the same Prize Contract that formed the basis for [Plaintiff's] claim."  (*See* doc. 302 at 2-5.)

> In the order granting Defendant's motion for attorneys' fees, the court expressly found that:
>
>> like in *Veale* and *Wilkins*, this dispute concerned claims and counterclaims concerning a contract between the parties, and while several of these claims were "based on different *provisions*" of the contract, the claims ultimately focused on "alleged breaches of the same contract." *In other words, [Plaintiff's] and [Defendant's] multiple claims and counterclaims "ar[o]se out of the same transaction," namely, the contract into which the parties entered. [Defendant] ultimately prevailed in defending against [Plaintiff's] breach of contract, and was consequently awarded $550,000.* The Court finds that this case falls within the exception to § 38.001's prohibition on attorney's fees for the defense of claims. Accordingly, because § 38.001 allows [Defendant] to recover attorney's fees, [Defendant] has met Rule 54's requirement that a statute may award attorney's fees to a prevailing party. As such, [Defendant] is the "prevailing party" for purposes of being awarded attorney's fees.

(doc. 271 at 7-8) (internal citations omitted and emphasis added).  The order granting attorneys' fees did not expressly address segregation of attorneys' fees, but it acknowledged the claims and counterclaims, found that they arose from the same transaction for which Defendant was awarded $550,000,[9] and found that Defendant was entitled to attorneys' fees under § 38.001.  (*See id.*) Likewise, in considering costs, the court found that "[Defendant's] counterclaims 'were defensive in nature,'" and that it succeeded on the "significant issue" of the case.  (doc. 270 at 6-7.)

Although Defendant's unsuccessful counterclaims arose out of the same transaction for which it was awarded $550,000, merely arising out of the same transaction is not the standard for recovery.  *See Chapa*, 212 S.W.3d at 313-14.  The legal work also needs to advance both claims.

---

[9] In deciding the motions for summary judgment the district court found that Defendant was entitled to $550,000 "[b]ecause the Court finds that the Contract as a whole is subject to a definite legal meaning as to the amount owed, the Court concludes the Contract is unambiguous. . . . [and] the unambiguous terms of the Contract provides Yahoo is entitled to a return of the $1.1 million it paid, less a 50% penalty, or $550,000."  (doc. 237 at 13.)

*Id.* ("[I]t is only when discrete legal services *advance both* a recoverable *and* unrecoverable claim that they are so intertwined that they need not be segregated.") (emphasis added). Because Defendant has not shown that it would have done the same work for which it is requesting fees had it not brought the unsuccessful counterclaims, its attorneys' fees should be segregated.

### B.   <u>Failure to Segregate</u>

Defendant's redacted billing invoices do not segregate fees by claim. (*See* docs. 276 at 57-92; 276-1 at 1-77; 276-2 at 1-54; 276-3 at 1-51; 276-4 at 1-49; 276-4 at 61-79; 276-4 at 97-105). It argues that "[t]o try to segregate hours that [it] devoted to defending [Plaintiff's] breach of contract claim from the hours that [its] attorneys devoted to advancing its counterclaims would be *impossible*." (doc. 303 at 9) (emphasis added). "[T]o the extent that the Court finds that segregation is required, [it] proposes a reasonable segregation in the amount of $2,055,883.95, or 85% of its total attorneys' fees." (doc. 275 at 15.)

"A failure to segregate attorney's fees does not mean that the claimant cannot recover any attorney's fees. To the contrary, the amount of unsegregated attorney's fees for the entire case is some evidence of the amount of segregated attorney's fees." *Eagle Suspension, Inc., v. Hellman Worldwide Logistics, Inc.*, No. 3:12-CV-0611-G, 2015 WL 252442, at *2 (N.D. Tex. Jan. 20, 2015) (quoting *Jacks v. G.A. Bobo*, No. 12-10-00163-CV, 2011 WL 2638751, at *4 (Tex. App.–Tyler June 30, 2011, no pet.) (citing *Chapa*, 212 S.W.3d at 314)); *7979 Airport Garage L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 510 (Tex. App.–Houston [14th Dist.] 2007, pet. denied) ("But [the defendant] did not forfeit its right to recover attorneys' fees by failing to segregate them. The evidence it presented regarding the total amount of attorneys' fees it incurred is some evidence of what the segregated amount should be."). "Attorneys are not required to keep separate time records

when drafting parts of a petition or completing other tasks that relate to claims for which attorney's fees are unrecoverable. Rather, an attorney may testify, for example, that a given percentage of the drafting time would have been necessary even if the claim for which attorney's fees are nonrecoverable had not been asserted." *Am. Intern. Indus., Inc. v. Scott*, 355 S.W.3d 155, 163 (Tex. App.–Houston [1st Dist.] 2011, no pet.) (internal quotation marks omitted); *see also Shed, L.L.C. v. Edom Wash'N Dry, L.L.C.*, No. 12-07-00431-CV, 2009 WL 692609, at *10 (Tex. App.–Tyler Mar. 18, 2009, pet. denied) ("The usual method of proof of the amount of reasonable attorney's fees is the opinion testimony of lawyers testifying as expert witnesses.").

Defendant provides the testimony of Mr. Lane, its lead attorney, who argues for a 15% reduction. (docs. 275 at 15-16; 276 at 33 & n.24.) According to Defendant:

> Defending against [Plaintiff's] breach of contract claim necessitated [Defendant's] parallel breach of contract claim; this breach of contract required an investigation and presentation of [Plaintiff's] breach of fiduciary duty; that breach of fiduciary duty could not be properly explained without an elaboration on [Plaintiff's] negligent misrepresentation and misappropriation of trade secrets. A successful defense of [Plaintiff's] breach of contract claim, providing recovery in full, necessarily required that [Defendant] fully brief and argue all of its defenses and counterclaims to ensure a full and complete record. Indeed, attorneys' fees should not be "disallowed simply because they do double service."

(doc. 303 at 10) (citation omitted).

Plaintiff responds that Defendant's fees should be reduced by 75%. (doc. 292 at 14.) It argues that Defendant's motion to dismiss briefing, third-party discovery, fees associated with 13 depositions, all discovery motions and hearings, and all fees incurred in connection with its expert, Christian Tregillis, should be fully segregated. (*Id.* at 14-15.) Additionally, it argues that "[a] very large percentage" of fees incurred in connection with written discovery, document production and review, six additional depositions, and motion for summary judgment briefing should also be

segregated.  (*Id.* at 15-16.)

As noted, several counterclaims were dismissed initially, and all of the remaining claims were resolved through competing motions for summary judgment, so recoverable and non-recoverable claims were handled at the same time.  In granting attorneys' fees, the court found that the parties' "multiple claims and counterclaims 'ar[o]se out of the same transaction,' namely, the contract into which the parties entered. [Defendant] ultimately prevailed in defending against [Plaintiff's] breach of contract, and was consequently awarded $550,000."   (doc. 271 at 7.) Defendant has presented evidence that a 15% reduction would be appropriate given the overlapping nature of the claims and counterclaims and the court's finding.[10]  *See Eagle Suspensions, Inc. v. Hellman Worldwide Logistics, Inc.*, No. 3:12-CV-0611-G, 2015 WL 252442, at *3 (N.D. Tex. Jan. 20, 2015) (party's request for an 85% segregation of fees was reasonable); *see also Lance v. Robinson*, No. 04-14-00758-CV, 2016 WL 147236, at *17 (Tex. App.—San Antonio Jan. 13, 2016) (party's request for an 85% segregation of fees was reasonable); *Berryman's South Fork, Inc. v. J. Baxter Brinkmann Int'l Corp.*, 418 S.W.3d 172, 202 (Tex. App.—Dallas 2013) (party's request for an 85% segregation of fees was reasonable).

## IV. ATTORNEYS' FEES

Defendant seeks $2,418,687.40 in attorneys' fees, expert and mediator expenses, and costs, citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). (docs. 275 at 17; 276 at 1.)[11]

---

[10] The reasonableness of the fees requested is addressed in calculating the lodestar.

[11] The parties expressly relied on *Johnson* in their filings.  Notably, the order granting attorneys' fees directly referred to *Johnson*.  (*See* doc. 271 at 3, 11 ("In the second step of the lodestar method, the court considers whether the lodestar figure should be adjusted upward or downward depending on its analysis of the *Johnson* factors.").)  As discussed, however, Texas law authorizes the award of attorneys' fees in this diversity case.  *Mathis*, 302 F.3d at 461.

In adjudicating an attorneys' fee award, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996); *Louisiana Power & Light Co.*, 50 F.3d at 324. Next, a court must consider whether the lodestar figure should be adjusted upward or downward depending on its analysis of twelve *Johnson* factors.[12] *Riley*, 99 F.3d at 760; *Louisiana Power & Light Co.*, 50 F.3d at 331. "Many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate and should not be double-counted." *Jason D.W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 209 (5th Cir. 1998) (internal citations omitted). The most critical factor in determining the reasonableness of an attorneys' fee award is the degree of success obtained. *Hensley*, 461 U.S. at 436.

## A.  The Lodestar

Defendant submits the declarations of Thomas Patrick Lane, Darrell W. Cook, and Mark A.

---

Texas courts consider the factors listed in *Arthur Anderson & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997), which include (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; 2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; 3) the fee customarily charged in the locality for similar legal services; 4) the amount involved and the results obtained; 5) the time limitations imposed by the client or by the circumstances; 6) the nature and length of the professional relationship with the client; 7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and 8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. Neither party mentioned *Anderson*. Based on the parties' express reliance on *Johnson*, the fee award is analyzed using its twelve factors.

[12] The twelve factors are: (1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Cobb v. Miller*, 818 F.2d 1227, 1231 n.5 (5th Cir. 1987) (citing *Johnson*, 488 F.2d at 717-19).

Shank; attorney biographies; invoices; emails; deposition transcript excerpts; and discovery

excerpts. (*See* docs, 276, 276-1, 276-2, 276-3, 276-4, 276-5, 276-6, 276-7, 276-8, 276-9, 296, 296-

1.)

### 1. *Reasonable hourly rates*

Defendant has the burden of showing that its attorneys' hourly rates are reasonable. *La.*

*Power & Light Co.*, 50 F.3d at 324. "Typically, the Court receives copies of resumes or summaries

of the qualifications of attorneys involved in the litigation, as well as information regarding the

individuals' litigation skills generally." *Neles–Jamesbury, Inc. v. Bill's Valves*, 974 F. Supp. 979,

987 n.19 (S.D. Tex. May 30, 1997). Further, "[t]o inform and assist the court in the exercise of its

discretion [in analyzing reasonable hourly rate], the burden is on the fee applicant to produce

satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in

line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation. A rate determined in this way is normally deemed to

be reasonable, and is referred to—for convenience—as the prevailing market rate." *Blum v. Stenson*,

465 U.S. 886, 895 n.11 (1984) (emphasis added); *see Tollett v. City of Kemah*, 285 F.3d 357, 368

(5th Cir. 2002) ("Generally, the reasonable hourly rate for a particular community is established

through affidavits of other attorneys practicing there."); *Watkins v. Fordice*, 7 F.3d 454, 458 (5th

Cir. 1993).

Here, Defendant seeks rates between $200 and $504 per hour for nine different associate

attorneys,[13] and between $295 and $931.50 per hour for four different partners.[14]  (*See* docs. 276 at

14, 16-17; 276-4 at 56.)   Mr. Lane's and Mr. Cook's declarations address the background and

qualifications of the attorneys (*see* docs. 276 at 5-34; 276-4 at 51-60), and Defendant also provides

in-depth biographical information for them  (*see* docs. 276 at 36-55; 276 at 82-88).  Mr. Lane opines

that the requested attorneys' fees for the three firms are "reasonable" and "necessary."  (doc. 276

at 5.)  Mr. Cook opines that "[t]he billing rates . . . [for DWCA are] lower than reasonable and

customary billing rate for legal services rendered in the North Texas area for similar cases."  (doc.

276-4 at 56.)[15]

　　　Mr. Shank, the managing partner of Gruber Elrod Johansen Hail Shank LLP, avers that he

has nearly 37 years of trial experience, mostly in Texas, and is active in the Dallas and Texas bar

communities, including have served as the Director of the State Bar of Texas from 2002-2005 and

the President of the Dallas Bar Association in 2001.  (*Id.* at 53.)(doc. 276-8 at 52-63.)  As an

attorney who practices in the Dallas area, he was asked "to review and to opine on the reasonable,

---

[13] Carrie Dolton of Gober is only identified as a "seasoned  attorney" in the provided information.  (*See* docs. 276 at 17; 276-4 at 93.)  Because her actual position is unclear (*e.g.*, associate attorney, senior attorney, of counsel, partner, etc.) from the provided information, she will be included in the associate attorney section.

[14] According to Mr. Lane, Winston & Strawn voluntarily discounted the hourly rates of both partner and associate attorneys by 10%, as follows: $1,035 to $931.50 per hour for Michael Elkin (partner); $860 to $774 per hour for Thomas Patrick Lane (partner); $560 to $504 per hour for Desiree Ripo (associate); $490 to $441 per hour for Scott Ahmad (associate); $390 to $351 per hour for Isabelle Mercier-Dalphond (associate); $390 to $351 per hour for Lauren Duxstad (associate); and $390 to $351 per hour for Doian Slater Thomas (associate).  (doc. 276 at 13-14.)

[15] In addition to his own experience, Mr. Cook also relies on the Laffey Matrix produced by the Department of Justice for 2014-2015.  (*See id.* at 56-57.)  The Laffey Matrix is "a rate schedule produced by the Department of Justice for attorneys in the Washington–Baltimore area."  *Malick v. NCO Fin. Servs., Inc.*,  No. H-14-1545, 2015 WL 4078037, at *4 (S.D. Tex. July 6, 2015).  "The Fifth Circuit does not appear to have used the Laffey Matrix to determine reasonable rates because the Laffey Matrix doe not account for the prevailing rates in the community," however.  *Id.* at *4 & n.3 (citing *In re Enron Corp. Securities, Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 819 (S.D. Tex. 2008) ("[T]he Laffey Matrix is also contrary to federal case law in lodestar cases, which requires the district court to award to the petitioning attorney fees in accordance with the prevailing rate that other attorneys of comparable skill, experience and reputation would charge for similar work in the relevant market place.")).  Because the Laffey Matrix does not address the prevailing market rate in the Dallas area, its rates are not applicable to Defendant's lodestar calculation.

necessity, fairness and propriety of legal services, and fees incurred by [Defendant] and the reasonableness of and conformity with legal standards in the state of Texas and this Court in this area of the fees, interest and expenses necessary to the prosecution of this suit." (*Id.* at 52.)  In his opinion, the "fees requested by [Defendant] are reasonable and in conformity with the legal standards in the state of Texas and this Court." (*Id.*)

Plaintiff argues that the attorneys' fees Defendant seeks are "not reasonable and must be reduced." (doc. 292 at 18.)  Regarding the Winston attorneys, Plaintiff argues (1) Defendant incorrectly applied New York-based rates without justification; (2) Defendant has not submitted competent evidence to demonstrate that its out-of-district rates are comparable to Dallas rates; (3) Defendant's statements regarding New York-based rates are contradicted by the actual evidence of rates charged by Dallas lawyers; (4) Plaintiff's evidence shows that Dallas attorney rates are consistent with DWCA's hourly rates, which are lower than the rates charged by Winston; (5) no information was submitted to justify the rates of five associates at Winston that were far higher than hourly rates at DWCA; and (6) "the rates submitted by [Defendant] are out-of-line with rates approved by this Court in other contexts and submitted by other lawyers." (doc. 292 at 18-20.)  It then proposes new rates for the Winston attorneys between $395 and $475 per hour for partners, and $230 and $335 per hour for associate attorneys. (*Id.* at 21.)

Plaintiff does not object to the hourly rates for the DWCA attorneys, stating that "[i]f anything, . . . the Court should adopt DWCA's rates for Winston." (*Id.* at 292 n.10.)  Plaintiff also does not appear to object to the rates requested for Gober's attorneys. (*See id.* at 25) (objecting only to the work performed and not the requested hourly rates).

Some of the rates Defendant seeks are higher than rates previously accepted in the Dallas

area for similar matters.  *See United States Sec. & Exch. Comm'n v. Harris*, No. 3:09-CV-1809-B, 2016 WL 1555773, at *11 (N.D. Tex. Apr. 18, 2016) ("the Court concludes that a reasonable hourly rate for the [fee applicant] and her counsel should likely fall between $100 and $400 per hour"); *SortiumUSA, LLC v. Hunger*, No. 3:11-CV-1656, 2015 WL 179025, at *3 (N.D. Tex. Jan. 14, 2015) (finding reasonable hourly rate of $350 for a partner and $250 for an associate and noting that "hourly rates of over $500 are charged in this community for a select group of top attorneys"); *Szjjarto v. McCarrell*, No. H-11-4226, 2014 WL 555122, at *3-4 (S.D. Tex. Feb, 12, 2014) (quoting *Fluor Corp. v. Citadel Equity Fund Ltd.*, No. 3:08–cv–1556–B, 2011 WL 3820704, at *5 (N.D. Tex. Aug. 26, 2011)) (finding reasonable hourly rate of $350 for a partner and $250 for an associate and observing that in "cases involving Texas lawyers, the hourly rates range from $220 for associates to $510 for senior partners); *see also Powell v. Procollect, Inc.*, No. 11–cv–846–B, Dkt. No. 30 (N.D. Tex. July 18, 2012) (finding an average hourly rate of $250, with hourly rates from $100 to $400 per hour for each attorney, to be reasonable in this community).[16]

Taking into account the hourly rates for attorneys in other similar cases; the biographical information provided; Mr. Lane's, Mr. Cook's, and Mr. Shank's declarations; and the hourly rates of DWCA and Gober, the hourly rates for the Winston attorneys should be reduced.  Mr. Elkin and Mr. Lane's hourly rates should be reduced to $500 per hour; Ms. Ripo and Mr. Ahmad's hourly rates should be reduced to $370 per hour; and Ms. Mercier-Dalphond, Ms. Duxstad, and Mr. Thomas's hourly rates should be reduced to $270 per hour.  Plaintiff did not object to the remaining hourly rates for Mr. Cook, Ms. Keith, Ms. Parker, Mr. Espinosa, Mr. Hilgers, and Ms. Dolton, and they are

---

[16] "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market, not the rates that 'lions at the bar may command.' " *Hopwood v. Texas*, 236 F.3d 256, 281 (5th Cir. 2000) (citation omitted).

consistent with the prevailing market rate in this area.[17]  Accordingly, their rates are reasonable.

### 2.      Reasonable Number of Hours

In order to determine the reasonable number of hours expended in a case, "[t]he party seeking attorney's fees must present adequately documented time records to the court." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  "[T]he documentation must be sufficient for the court to verify that the applicant has met its burden." *Louisiana Power & Light Co.*, 50 F.3d at 325 (citation omitted).  Contemporaneous billing records are acceptable documentation for determination of reasonable hours.  *See Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990).

Here, Defendant submitted copies of contemporaneous billing records and invoices covering February 2, 2014 through April 15, 2016 from Winston.  (docs. 276 at 57-92; 276-1 at 1-77; 276-2 at 1-54; 276-3 at 1-51; 276-4 at 1-49.)  Additionally, Defendant submitted billing records and invoices from DWCA that cover February 3, 2014 through March 25, 2016 (doc. 276-4 at 61-79), and from Gober that cover March 6, 2015 through June 9, 2015 (doc. 276-4 at 97-105).  Its billing statements from Winston reflect 176.5 hours for Mr. Elkin; 1,034.1 hours for Mr. Lane; 909.2 hours for Ms. Ripo; 246.9 hours for Mr. Ahmad; 453.9 hours for Ms. Mercier-Dalphond; 190 hours for Ms. Duxstad; and 1,076.9 hours for Mr. Thomas.  (*See* docs. 276 at 57-92; 276-1 at 1-77; 276-2 at 1-54; 276-3 at 1-51; 276-4 at 1-49.)  Additionally, its DWCA billing statements reflect 395.5 hours for Mr. Cook; 34.5 hours for Ms. Keith; 157.6 hours for Ms. Parker; and 42 hours for Mr. Espinosa (*see* doc. 276-4 at 61-79), and its Gober billing statements reflect 26.1 hours for Mr. Hilgers and 1

---

[17] "When the hourly rate is not objected to by the opposing party, some courts have accepted the fee applicant's asserted reasonable hourly rate."  *S & H Indus., Inc. v. Selander*, No. 3:11-CV-2988-M-BH, 2013 WL 6332993, at *3 n.4 (N.D. Tex. Dec. 5, 2013) (citing *Baulch v. Johns*, 70 F.3d 813, 818 n. 8 (5th Cir. 1995)).

hour for Ms. Dolton (*see* doc. 276-4 at 97-105).[18]

Plaintiff raises a number of objections to the reasonableness of the hours requested.  (doc. 292 at 21, 24.)

### a.    *Billing Judgment*

Plaintiff argues that Defendant has not demonstrated use of billing judgment and requests a 20% to 25% reduction of the overall fee after segregation.  (*Id.* at 23.)

A fee applicant "[is] charged with the burden of showing the reasonableness of the hours [it] bill[s] and, accordingly, [is] charged with proving that [it] exercised billing judgment." *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).  Billing judgment "refers to the usual practice of law firms in writing off unproductive, excessive, or redundant hours[, and fee applicants] submitting fee requests are *required* to exercise billing judgment." *Id.* (emphasis added). "The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment."  *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006) (per curiam); *see, e.g., Walker*, 99 F.3d at 770 (reduced applicants requested fees by 15% "to substitute for the exercise of billing judgment" of the plaintiff's attorney); *US Green Building v. Wardell*, No. 3:14-CV-01541-M-BH, 2016 WL 3752964, at *9 (N.D. Tex. June 17, 2016), *adopted by* 2016 WL 3766362 (N.D. Tex. July 11, 2016) (same); *Leroy v. City of Houston*, 831 F.2d 576, 585-86 (5th Cir. 1987) (ordering a 13% reduction when plaintiff's attorney made no reduction to the lodestar for billing judgment); *Saizan v. Delta Concrete Products Co.*, 448 F.3d 795 (5th Cir. 2006) (per curiam)

---

[18] Defendant is not seeking fees related to time for support staff who also worked on the case at any of the three firms.  (*See* doc. 276 at 14-15.)  Accordingly, those rates and hours are not included.

18

(affirmed a 10% reduction by the trial court because the plaintiff failed to provide evidence of billing judgment); *Mauricio v. Phillip Galyen, P.C.*, No. 3:14-CV-64-L, 2016 WL 1273337 (N.D. Tex. Mar. 30, 2016) (noting that a voluntary reduction of 20% was consistent with the exercise of billing judgment).

Here, in his second declaration, Mr. Lane argues that he has shown billing judgment because he "discounted Winston's hourly rates by 10 percent" and that "[t]his discount is in addition to [Defendant's] decision to request fees based on Winston's 2013 billing rates—the date this litigation began—rather than calculate its fees based upon the billing rate of the year in which the fees were incurred, further discounting its attorneys' fees."[19]  (doc. 296 at 27.)  Mr. Lane further argues:

> I also exercised my judgment as lead counsel in reviewing the actual entries. I carefully reviewed each and every individual billing entry and charged disbursement with an eye toward making sure the invoices were critically considered. In that review, over the course of the years of this case, I have thus far reduced billing and disbursements by approximately $207,577.84, separate and apart from the 10% discount.

(*Id.* at 27-28.)

Although Defendant's lead attorney contends that he reviewed the billing entries "with an eye toward making sure the invoices were critically considered" and reduced billing entries, he does not point to specific entries that were removed or reduced for billing judgment.  (*See id.* at 27.) They are also not readily apparent from review of the billing statements.  (*See* docs. 276 at 57-92; 276-1 at 1-77; 276-2 at 1-54; 276-3 at 1-51; 276-4 at 1-49; 276-4 at 61-79; 276-4 at 97-105). Assuming that Mr. Lane did write off some unproductive, excessive, or redundant hours when he reduced the bill by approximately $207,577.84, that reduction would be only approximately 8% of

---

[19] The Winston rates were previously determined to be unreasonable, even with the voluntary 10% reduction, and lower rates for all Winston attorneys have been recommended.

the total requested amount, which is lower than some billing judgment reductions.  Additionally, a review of the billing statements appears to show repetitive and redundant work in many of the Winston attorneys meeting with each other, communicating with each other, and reviewing each others work.  (*See* docs. 276 at 57-92; 276-1 at 1-77; 276-2 at 1-54; 276-3 at 1-51; 276-4 at 1-49.) Additionally, Defendant does not argue that DWCA or Gober exercised billing judgment.  Because Defendant's billing judgment appears minimal, an additional reduction for billing judgment is warranted.

Courts in the Northern District of Texas have applied a 15% reduction in similar cases when a fee applicant has not demonstrated billing judgment.  *See US Green Building*, 2016 WL 3752964, at *9 (reducing the hours by 15%); *Walker*, 99 F.3d at 770 (same).  Although Mr. Lane has shown some billing judgment by voluntarily reducing the bill by $207,577.84, an additional reduction of 10% is appropriate given the facts of this case.

### b.    *Block Billing, Redactions, and Vagueness*

Plaintiff also argues that Defendant failed to properly document time entries through use of block billing, redactions, and vagueness.  (doc. 292 at 24-25.)  It seeks a 20% reduction in attorneys' fees because "[v]irtually every entry was block billed and vague descriptions combined with heavy redactions make assessing reasonableness of the entries difficult if not impossible."  (*Id.* at 26.)

"The term 'block billing' refers to the disfavored 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'"  *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 3999171, at *4 n.5 (N.D. Tex. July 1, 2015) (quoting *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-CV-0752-D, 2011 WL 487754, at *4 (N.D. Tex. Feb. 11, 2011)); *Inclusive*

*Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, No. 3:08-CV-0546-D, 2013 WL 598390, at *4 (N.D. Tex. Feb. 15, 2013).   Block billing "prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *Hoffman*, 2015 WL 3999171, at *4 n.5 (citation omitted). "Most courts that have addressed block billing have concluded that denying all block-billed attorney's fees is not appropriate," however. *Bramlett v. Medical Protective Co. of Fort Wyne, Ind.*, No. 3:09-cv-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) (citing *Trulock v. Hotel Victorville*, 92 F. App'x 433, 434 (9th Cir. 2004) (holding that block billing "is not a basis for refusing to award attorneys' fees")).   "[M]any courts reviewing block-billed time entries have performed a percentage reduction either in the number of hours or in the lodestar figure, typically ranging from 10% to 30%." *Bramlett*, 2010 WL 3294248, at *3 (emphasis added).

Although counsel is "not required to record in great detail how each minute of his time was expended . . . at least counsel should identify the general subject matter of his time expenditures." *Thermotek, Inc. v. Orthoflex, Inc.*, Nos. 3:11-CV-870-D, 3:10-CV-2618-D, 2016 WL 6330429, at *9 (N.D. Tex. Oct. 27, 2016) (noting the fee applicant "must present detailed time records of the hours expended by each lawyer indicating the nature of the particular work done by each, but these records do not need to be perfect") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). In *Bramlett*, a court found that counsel's affidavit amounted to block billing because the affidavit included compensation for "substantial blocks of time, listing multiple activities for those blocks of time" and "[did] not specify the time per legal service rendered or the date on which the service was

rendered." *Bramlett*, 2010 WL 3294248, at *3-4.[20]  As a result, the court reduced counsel's hours

by 25%.  *Id.*  In *Hoffman*, a court found that a 30% reduction in hours was sufficient to account for

block billing.  *Hoffman*, 2015 WL 3999171, at *4.  Similarly, in *Fabela*, a court found entries stating

only "prepar[ing] the complaint" or "prepare complaint" without explaining what "prepare

complaint" meant were block billed, thus impairing the court's ability to determine whether the time

spent was reasonable.  *Fabela v. City of Farmers Branch*, No. 3:10-CV-1425-D, 2013 WL 2655071,

at *7, n.14 (N.D. Tex. June 13, 2013).

Similarly, a "court may properly reduce or eliminate hours when the supporting

documentation is too vague to permit meaningful review."  *La. Power & Light Co.*, 50 F.3d at 324;

*see, e.g., Thermotek, Inc.*, 2016 WL 6330429, at *10-11 (reducing lodestar by 10% for "overly

redacted entries and a lack of billing judgment" after the responding party argued that "the

redactions throughout the Declaration . . . render[ed] the original description vague.").  Vague

entries are those that are "not illuminating as to the subject matter" or "vague as to precisely what

was done."  *Barrow*, 2005 WL 6789456, at *11 (citation omitted).  Examples such as: "revise

memorandum," "review pleadings," "review documents," and "correspondence" are sufficiently

vague that the court could accept or reject them in a fee application.  *Id.* (citation omitted).  In

*Barrow*, the court found entries, such as "review file," "preparation of correspondence," "review

correspondence," "phone conference with co-counsel," "legal research," and "review email" were

all vague and did not award attorney fees for these entries.  *Id.* (citation omitted); *see Hensley*, 461

U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the

---

[20] "The following is an example of the level of description in the affidavit: 'reviewing and analyzing Plaintiffs' first amended complaint, conducting research regarding the cause of action raised in that pleading and potentially applicable defenses, and preparing answers for all four of my clients (at least 10.3 hours).'" *Bramlett*, 2010 WL 3294248, at *3.

award accordingly."); *see also Hoffman*, 2015 WL 3999171, at * 1 n.6.

Here, the billing statements for Winston, DWCA, and Gober are heavily redacted and appear to use block billing, and some of the descriptions are unclear. (*See, e.g.,* docs. 276 at 90; 276-1 at 30; 276-2 at 46; 276-4 at 61, 97).[21] Because the billing statements are generally vague, an overall reduction is warranted. An additional reduction of 20% is therefore appropriate and consistent with similar cases in this district.[22] *See Hoffman*, 2015 WL 3999171, at *5 ("And as the court explains below, it is applying a 20% threshold reduction, followed by a 30% reduction for block billing and 10% billing judgment reduction to the 721.7 hours for which Hoffman is seeking compensation. L & M has failed to show that percentage reductions of this magnitude are insufficient to account for any time entries that are duplicative, excessive, or vaguely recorded.").

In conclusion, after including a 10% reduction for billing judgment; a 20% reduction for block billing, heavy redactions, and vagueness; and a 15% reduction for failure to segregate attorneys' fees, Defendant's lodestar is $913,961.23.

## B.   Adjustment to Lodestar

Next, a court must determine whether the lodestar value should be adjusted based on the

---

[21] For example, on November 16, 2014, a Winston attorney billed 6.2 hours for "Review of documents [Redacted]." (doc. 276-1 at 30.) On February 20, 2015, another Winston attorney billed 5.3 hours for "[Redacted] continued drafting [Redacted] motion to [Redacted]; review of [Redacted]." (doc. 276-1.) Likewise, on March 8, 2014, DWCA attorney billed 6.2 hours of time for "Draft answer; Draft Counter Claim; Research." (doc. 276-4 at 61.) Additionally, a Gober's attorney billed 4.4 hours on March 9, 2015 for: "Work on [redacted]; work on [redacted]; multiple email communications with [redacted] re same; draft and finalize [redacted] multiple emails, edits, review of [redacted] coordinate filing of [redacted]." (doc. 276-4 at 97.)

[22] Defendant did not provide unredacted copies for *in camera* review to meet its initial burden. *See Compass Bank v. Vey Finance*, No. EP-11-CV-359-PRM, 2012 WL 2397445, *2 (W.D. Tex. June 25, 2012); *Sorkin v. Universal Bldg. Prod. Inc.*, No. 1:08–CV–133, 2010 WL 519742, *4 (E.D. Tex. Feb. 9, 2010). Nor did it move to reopen the evidence to provide unredacted copies. *See In re Frazin*, 413 B.R. 378, 416 n. 33 (N.D. Tex.2009). It only offered to provide unredacted billing records if ordered to do so. (doc. 295 at 1 n.1) ("Should the Court so wish, Yahoo is more than happy to present live testimony, unredacted invoices and further proof, if necessary."). As noted, the fee applicant bears the burden. *Riley*, 99 F.3d at 760; *Louisiana Power & Light Co.*, 50 F.3d at 324.

twelve *Johnson* factors.  *See Johnson*, 488 F.2d at 717-19.  If a particular factor is subsumed in the lodestar, it may not be used to adjust the lodestar amount.  *See Migis v. Pearle Vision*, 135 F.3d 1041, 1047 (5th Cir. 1998) (citing *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993)).  Defendant does not argue for an adjustment to the lodestar.  (*See* docs. 275 at 11-12; 276 at 21-30) (arguing that the *Johnson* factors weigh in favor of confirming their requested amount, and that no downward adjustment is warranted).  Plaintiff argues for a 50% reduction under the *Johnson* factors, but conditions this reduction on the outcome of its segregation argument.  (doc. 292 at 27-28, 31) ("If the Court *does not require segregation* then it [should] impose a 50% reduction on the amounts under the *Johnson* factors as described above.") (emphasis added).  Because segregation of attorneys' fees was found to be necessary and a 15% reduction has been recommended to address segregation, no further reduction appears necessary.  Even considering Plaintiffs arguments regarding adjustments to the lodestar, the *Johnson* factors appear to be adequately addressed in the initial lodestar calculation.  Additionally, there is a strong presumption that the lodestar figure represents a reasonable attorneys' fee.  *R.M. Perez & Assocs., Inc. v. Welch*, 960 F.2d 534, 541 (5th Cir. 1992).  The *Johnson* factors, are accurately reflected in the lodestar amount and no departure is necessary.

## V. COSTS, EXPENSES, AND OTHER FEES

Defendant also seeks $96,614.10 in travel expenses, expert witness fees, mediation costs, and additional DWCA expenses.  (doc. 276 at 16, 18-19, 32.)  As noted, on December 30, 2016, a bill of costs was issued taxing $70,269.88 against Plaintiff.  (doc. 276 at 31.)

"Texas law does not support the award of non-taxable costs under Texas Civil Practice and Remedies Code section 38.001."  *Kimberly-Clark Corp. v. Factory Mut. Ins. Co.*, No.

3:05-CV-2097-B, 2008 WL 1958998, at *10 (N.D. Tex. Apr. 30, 2008) (citing *Flint & Assocs. v. Intercontinental Pipe & Steel*, 739 S.W.2d 622, 626-627 (Tex. App–Dallas 1987, writ denied) (holding that section 38.001 does not allow award of non-taxable costs unless such fees are included as part of reasonable legal fees (*i.e.*, accounted for by the hourly rate billed)); *accord Sparks v. Baxter*, 854 F.2d 110 (5th Cir. 1988) (same). "The statute governing attorney's fees makes no provision for the award of expenses." *Flint & Assocs.*, 739 S.W.2d at 626 (citing Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2014)). "[Section] 38.001 does not allow award of non-taxable costs except insofar as they contribute to the overhead included in the attorney's hourly fee." *Totran Transp. Servs., Ltd. v. Fitzley, Inc*., No. L-08-125, 2011 WL 1363820, at *2 (S.D. Tex. Apr. 8, 2011) (citing *Flint & Assocs.*, 739 S.W.2d at 626-627 ). Because Defendant is seeking additional expenses and costs that are not covered under Section 38.001, the non-taxable costs, expenses, and other fees requested by Plaintiff should not be awarded. *See, e.g., Kimberly-Clark Corp*., 2008 WL 1958998, at *10 (denying a request for non-taxable costs under Section 38.001).

## VI.   RECOMMENDATION

Defendant should be awarded $913,961.23 in attorneys' fees.

**SO RECOMMENDED** on this 21st day of November, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

25

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE